UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES PIERSON,

        Petitioner,

                                   Case No. 1:10-cv-455
v.                                   Hon. Robert J. Jonker

MARY BERGHUIS,

        Respondent.

_____/

**REPORT AND RECOMMENDATION**

Petitioner, James Pierson, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## I.      Background

Following a jury trial, petitioner was convicted of second-degree murder, M.C.L. § 750.317, conspiring to commit murder, M.C.L. § 750.157a, and possession of a firearm during the commission of a felony, M.C.L. § 750.227b. *People v. Pierson (On Reconsideration)*, No. 279653, slip op. at p. 1 (Mich. App. Dec. 23, 2008) (docket no. 27); Trial Trans. IX at p. 4. Petitioner was acquitted of felony murder, M.C.L. § 750.316(1)(b), and his conviction for conspiracy was vacated by the trial court. *Pierson (On Reconsideration)*, slip op. at p. 1, fn. 1. Petitioner was sentenced as an habitual offender, fourth offense, M.C.L. § 769.12, to consecutive sentences of 27 to 50 years imprisonment for the second-degree murder conviction and two years imprisonment for the felony-firearm conviction. *Id.*, slip op. at p. 1.

Petitioner, through counsel, appealed his convictions to the Michigan Court of Appeals, filing a brief which raised five issues:

I.     Whether the trial court erred in denying the motion for a directed verdict. Whether [petitioner's] conviction must be reversed because (1) there is insufficient evidence of malice aforethought to sustain [petitioner's] conviction of second degree murder and (2) insufficient proof which excludes a claim of imperfect self-defense. Accordingly, whether [petitioner's] convictions violates due process. US Const. Am. XIV, Mich Const. 1963 Art 1, § 17.

II.    Whether [petitioner] received ineffective assistance of counsel when counsel (1) was not prepared for trial (2) conceded intent to kill without advancing a theory of voluntary manslaughter (3) failed to request a jury instruction on imperfect self-defense and (4) failed to request an instruction on voluntary manslaughter.

III.   Whether the trial court abused its discretion in refusing to admit statements against penal interest, MRE 804(B)(3) made by Steven Chevis to Starla Pierson, in which Chevis admitted shooting Dawson [the victim].

IV.    Whether the trial court committed reversible error in failing to instruct the jury on imperfect self defense and voluntary manslaughter and violated [petitioner's] due process right to a properly instructed jury. US Const. AM XIV, [Mich] Const. 1963, Art 1, § 17.

V.     Whether [petitioner's] sentence was improperly enhanced on the basis of factual findings not found by the jury beyond a reasonable doubt, i.e., the scoring offense variables, contrary to his Sixth Amendment right to a jury trial and his Fourteenth Amendment right to due process.

Brief (docket no. 27).

The Michigan Court of Appeals affirmed petitioner's convictions. *People v. Pierson (On Reconsideration)*, No. 279653. Petitioner raised the same issues in his application for leave to appeal to the Michigan Supreme Court, which that court denied because it was not persuaded that the questions presented should be reviewed. *People v. Pierson*, No. 138175 (Mich. May 27, 2009) (docket no. 28). Pierson raised these same five grounds in his present habeas petition.

## II.     Procedural default with respect to Issue IV

Issue IV involves alleged trial court error for failing to give instructions on imperfect self-defense and voluntary manslaughter.  Respondent contends that this issue is procedurally defaulted.  The Michigan Court of Appeals found that plaintiff had waived  his claim that the trial court failed to give him an imperfect defense instruction, because he "failed to object to the jury instructions and indicated approval of the instructions as given."  *Pierson*, No. 279653, slip op. at p. 5.  The court then performed a plain error review, stating that "[r]egardless, defendant was not entitled to such an instruction because he had not advanced an imperfect self-defense theory at trial." *Id.*     While the Michigan Court of Appeals referred to petitioner's failure to object to the "jury instructions," it did not explicitly address petitioner's claim with respect to the voluntary manslaughter instruction.

Although respondent contends that petitioner's claims raised in Issue IV are barred by the procedural default doctrine, the court is not bound to address the issue of procedural default if those claims are resolved against the petitioner on the merits.  "[J]udicial economy sometimes dictates reaching the merits if the merits are more easily resolvable against a petitioner while the procedural bar issues are complicated."  *Barrett v. Acevedo*, 169 F.3d 1155, 1161-62 (8th Cir. 1999) (internal citations omitted).  *See Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (allowing courts to skip the procedural default issue and reject a claim on the merits); *Stokes v. Scutt*, – Fed. Appx. –, No. 11-2448, 2013 WL 2249300 at *6 fn. 3 (6th Cir. May 22, 2013) ("where the merits of a claim present a more straightforward ground for decision, we may consider the merits of the claim first and then reach the procedural default question only if necessary") (internal quotation marks omitted); *Arias v. Hudson*, 589 F.3d 315, 316 (6th Cir. 2009) (court bypassed the issue of procedural

default claim to deny the petition on "a more straightforward ground"); *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999) (magistrate judge properly decided the case on the merits where procedural default issue raised more questions than the merits of the case). Here, the court will address and resolve petitioner's Issue IV on the merits because his habeas claims raised with respect to the jury instructions are without merit.

### III. Standard of review under 28 U.S.C. § 2254

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 776, 130 S. Ct. 1855, 1862 (2010) (internal quotation marks and citations omitted). "Under the 'contrary to' clause, a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S.

362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

## IV.    Discussion

### A.    Directed verdict and sufficiency of the evidence (Issue I)

Petitioner contends that the trial court erred in denying his motion for a directed verdict because the prosecutor failed to provide sufficient evidence of malice aforethought to establish second-degree murder and the trial court did not give an imperfect self-defense instruction. As discussed in § IV.D.1., Michigan does not recognize the imperfect self-defense. Accordingly, the court's review is limited to the sufficiency of the evidence claim.

At the close of the prosecution's evidence, petitioner's trial counsel moved for a directed verdict. Trial Trans. VI at pp. 107-24. This motion tests the sufficiency of the evidence

presented by the prosecution.  *See* MCR 6.419(A) (providing that "[a]fter the prosecutor has rested the prosecution's case-in-chief and before the defendant presents proofs, the court on its own initiative may, or on the defendant's motion must, direct a verdict of acquittal on any charged offense as to which the evidence is insufficient to support conviction").   As part of the argument for directed verdict, petitioner included a claim that the prosecutor failed to provide sufficient evidence to support a conviction for second-degree murder.  Specifically, the prosecutor failed to establish malice aforethought.   The trial court denied the motion.  Trial Trans. VI at pp. 124.

The Michigan Court of Appeals reviewed the trial court's decision as follows:

"When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt."  *People v. Aldrich*, 246 Mich.App. 101, 122, 631 N.W.2d 67 (2001).

The elements of second-degree murder are "(1) death, (2) caused by defendant's act, (3) with malice, and (4) without justification."  *People v. Mendoza*, 468 Mich. 527, 534, 664 N.W.2d 685 (2003).  Defendant only argues that the prosecution failed to provide sufficient evidence of malice.  Malice is "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm."  *People v. Goecke*, 460 Mich. 750, 758, 597 N.W.2d 130 (1999).  Malice may be inferred from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm, and it also may be inferred from the use of a deadly weapon.  *Id.*  at 759, 597 N.W.2d 130.

Defendant was charged with second-degree murder on an aiding and abetting theory.  "The requisite intent for conviction of a crime as an aider and abettor is that necessary to be convicted of the crime as a principal."  *People v. Mass*, 464 Mich. 615, 628, 628 N.W.2d 540 (2001) (quotation marks and citation omitted).  An aider and abettor's state of mind may be inferred from the facts and circumstances, including a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime.  *People v. Carines*, 460 Mich. 750, 757-758, 597 N.W.2d 130 (1999).

The prosecution presented evidence that defendant specifically told Daniel Frazier and Andy Tramper to lead him to the house of Gordie Dawson, the victim. After arriving at Dawson's house, defendant angrily made his way into the house with a gun and confronted Dawson about a food stamp card that Dawson had traded for drugs. Defendant threatened to kill Dawson and everyone in the house if Dawson did not pay him. After Stephen Chevis walked into Dawson's house, defendant, who had received some of the money, gave Chevis the gun and said, "If anybody tries anything, shoot 'em." The prosecution also presented evidence that defendant later ordered Chevis to shoot Dawson. After defendant hit Dawson with a crutch and Dawson retaliated, defendant yelled, "Blast him, blast him." Chevis shot Dawson in the head. This evidence, when viewed in a light most favorable to the prosecution, could persuade a rational trier of fact that defendant had the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood of cause death or great bodily harm. *Goecke*, *supra*; *Aldrich*, *supra* at 101, 631 N.W.2d 67.

*People v. Pierson*, slip op. at pp. 1-2.

In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364. Under *Jackson v. Virginia*, 443 U.S. 307 (1979), sufficient evidence supports a conviction if "after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis added). In determining whether sufficient evidence exists to support a conviction, the reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution. *Wright v. West*, 505 U.S. 277, 296-97 (1992).

In his brief, petitioner (sometimes referred to as "Muscles") stated that he suffered a spinal cord injury in an automobile accident and "can walk only with the aid of arm brace/crutches). Petitioner's Brief at p. 12. At trial, the prosecution presented testimony that

petitioner provided the shooter with the gun while instructing him to shoot anyone if they tried anything, called the victim to him and asked, "Where do you want it, in the head or in the chest?" then hit the victim along the side of his head with his metal crutch. Trial Trans. II at pp. 116-17. The witness (Andy Tramper) then stated that "as soon as Gordie [the victim] started fighting back and punching him, he [petitioner] said, "Blast him, blast him." *Id.* at p. 117. The evidence that petitioner struck the victim in the head with a metal crutch and then ordered the shooter to "blast" the victim supports the Michigan court's determination that petitioner act with malice. *See Goecke*, 460 Mich. at 759 (malice may be inferred from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm, and it also may be inferred from the use of a deadly weapon"); *Carines*, 460 Mich. at 757-58 (an aider and abettor's state of mind may be inferred from the facts and circumstances, including a close association between the defendant and the principal and the defendant's participation in the planning or execution of the crime). Petitioner need not have pulled the trigger himself to set in motion a force likely to – indeed, here, he intended to – cause Dawson to be killed or suffer great bodily injury. Moreover, petitioner's own words and commands amply prove his malice.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

### B. Ineffective assistance of counsel (Issue II)

Petitioner contends that his trial counsel, Mr. Lykins, was ineffective for four reasons.

### 1.    Counsel's lack of preparation for trial

First, petitioner contends that Mr. Lykins was not prepared for trial. The Michigan Court of Appeals addressed this claim as follows:

> Defendant next claims that he received ineffective assistance of counsel. Defendant did not move the trial court for a new trial or for a *Ginther* [*People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922 (1973)] hearing. However, defendant moved this Court to remand the matter so that he could preserve his claims of ineffective assistance of counsel. The Court denied the motion. *People v. Pierson*, unpublished order of the Court of Appeals, entered April 28, 2008 (Docket No. 279653). Because a *Ginther* hearing was never held before the trial court, our review is limited to mistakes apparent on the record. *See People v. Wilson*, 242 Mich.App. 350, 352, 619 N.W.2d 413 (2000). To prevail on his claim, defendant must show that defense counsel's performance fell below an objective standard of reasonableness and was so prejudicial that he was denied a fair trial. *People v. Toma*, 462 Mich. 281, 302, 613 N.W.2d 694 (2000). He must overcome the strong presumption that counsel's actions constituted sound trial strategy. *People v. Unger*, 278 Mich. 210, 242, 749 N.W.2d 272 (2008).
>
> First, defendant contends that counsel's performance was deficient when, before trial, he failed to discover the notes and photographs relating to Tramper's photographic identification of him. The notes revealed that Tramper was only 70 percent sure of the identification. Defense counsel may be found to have rendered ineffective assistance when unprepared for trial. *People v. Caballero*, 184 Mich. App. 636, 640, 459 N.W.2d 80 (1990). However, to succeed on such a claim, a defendant must demonstrate "that his counsel's failure to prepare for trial resulted in counsel's ignorance of, and hence failure to present, valuable evidence that would have substantially benefited" his case. *People v. Bass (On Rehearing)*, 223 Mich. App. 241, 253, 581 N.W.2d 1 (1997), *vacated in part on other grounds* 457 Mich. 866, 577 N.W.2d 667 (1998). Defendant has failed to demonstrate that counsel's failure to discover the information regarding Tramper's photographic identification of defendant before trial resulted in an absence of evidence that would have been valuable to his case. Counsel was permitted to speak with Tramper before Tramper testified, and during cross-examination of Tramper, counsel questioned Tramper about the photographic lineup and his identification of defendant. Moreover, defendant has not identified any evidence beneficial to his case that counsel would have discovered had counsel known of Tramper's identification of defendant.

*People v. Pierson*, slip op. at p. 3 (footnote omitted).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original), *cert. denied* 508 U.S. 975 (1993). Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

Petitioner had two defense counsel who represented him in this criminal matter prior to Mr. Lykins. Trial Trans. II at p. 36. Petitioner's argument is based on the premise that the prosecutor had given this material to the previous counsel and that Mr. Lykins was deficient because he was not aware of these materials. Petitioner further contends that Mr. Lykins "may have been able to further case doubt on Tramper's veracity" if Lykins had obtained copies of the government's notes related to Tramper's review of the photo lineup. Petitioner's Memo at pp. 26-27 (docket no. 2). Petitioner points out a conversation between Mr. Lykins, the prosecutor and the trial judge regarding the photo lineup, which included a photo of petitioner, which had been shown to Tramper.

Trial Trans. II at pp. 32-36. This conversation occurred on the second day of trial. Mr. Lykins stated that he had not received the materials, to which the prosecutor responded that he had turned everything over to petitioner's two previous attorneys as well as to Lykins. *Id.* at pp. 34-39. Mr. Lykins advised the court that the prejudice involved in this situation was that they did not know "that there was a photo lineup involving Mr. Tramper until today" and that they did not have an adequate opportunity to prepare for this issue. *Id.* at p. 40. During the course of these discussions, in which Mr. Lykins suggested the possibility of a mistrial, the judge asked Lykins how much time he needed to prepare. *Id.* Mr. Lykins responded that he needed enough time to track down Tramper, interview him regarding this process (the photo lineup), and figure out the legitimacy of the process. *Id.* The judge denied a motion for a mistrial, but allowed Mr. Lykins the opportunity to discuss this matter with Tramper. *Id.* at pp. 44-45. Ultimately, Mr. Lykins advised the court that it would not be necessary to interview Tramper. *Id.* at p. 183-84.

During Tramper's direct examination, the prosecutor elicited substantial testimony regarding his (Tramper's) criminal history and incarceration. Trial Trans. II at pp. 126-38. This included Tramper's testimony that he left a note for petitioner in the jail which stated in pertinent part, "Bitch, may you rot in hell for killing Gordie. I will see to it, you dirty nigger." *Id.* at pp. 136-37. Mr. Lykins engaged in a vigorous cross-examination of Tramper, which involved Tramper's identification of petitioner at the photo lineup as well as Tramper's use of crack cocaine and shoplifting to support his drug habit. *Id.* at pp. 138-82; Trial Trans. III at pp. 4-27.

Petitioner has not established that Mr. Lykins was deficient for failing to prepare for trial. It is unclear from the transcript whether the prosecutor provided this information to Mr. Lykins personally or whether Lykins received this information from petitioner's previous attorneys. But

to the extent Mr. Lykins' preparation for this witness was concerned, once he learned of Tamper's photo lineup identification of petitioner, Mr. Lykins raised the matter with the court, obtained an opportunity to interview Tramper, ultimately satisfied himself that an interview of this hostile witness was not necessary to an effective cross-examination[1], and Mr. Lykins then engaged in a vigorous cross-examination of Tramper, which squarely placed Tramper's credibility before the jury. There is no indication that different preparation would have made Mr. Lykins' cross-examination any more effective than it was.

### 2. Counsel's concession of "intent to kill"

Second, petitioner contends that Mr. Lykins conceded intent to kill without advancing a theory of voluntary manslaughter. The Michigan Court of Appeals addressed this issue as follows:

> Second, defendant claims that counsel was ineffective for conceding the "intent to kill" element during closing arguments. During closing arguments, defense counsel, when explaining the elements of first-degree murder, asked, "Does anybody suggest that someone didn't intend to kill Gordon Dawson?" Defense counsel then said, "Well, clearly that's true." A concession can render defense counsel's performance ineffective; however, "it is only a complete concession of defendant's
> guilt which constitutes ineffective assistance of counsel." *People v. Krysztopaniec*, 170 Mich.App. 588, 596, 429 N.W.2d 828 (1988). Counsel's statement was consistent with the defense theory of the case, which was that defendant was innocent of killing Dawson. Defendant testified that he was involved in a fight with Dawson when Chevis came in and shot Dawson three times. Defendant further testified that he did not have a gun when he walked into Dawson's house and that he did not order Chevis to shoot Dawson. Accordingly, counsel's statement that whoever killed Dawson intended to kill him was not any concession, much less a complete concession, of defendant's guilt. Counsel's decisions about which theories

---

[1]Good advocacy by no means requires the examiner to personally speak to every witness beforehand. Such a conversation is a two-way street. Where a hostile witness is anticipated and little additional information is to be gained beforehand, the meeting gives the witness the opportunity to take the measure of the attorney as well as vice-versa. Significantly, in the British criminal courts (where advocacy is reputed to be at least as good as our own), the examining barristers (customarily) do not speak to lay witnesses outside the courtroom, but take notes from others who have.

to argue at trial are matters of trial strategy that this Court will not second-guess. *People v. Julian*, 171 Mich.App. 153, 157, 429 N.W.2d 615 (1988).

*People v. Pierson*, slip op. at pp. 3-4.

In the court's opinion, the Michigan Court of Appeals correctly characterized Mr. Lykins' comments as part of a trial strategy rather than a concession of petitioner's "intent to kill." To put this comment in perspective, Mr. Lykins was no doubt aware that the jury would receive an instruction for first-degree premeditated murder. Indeed, the trial court gave this instruction which included as one of its elements "that someone intended to kill [the victim]." Trial Trans. VIII at pp. 91-92. The evidence at trial established that the gunman "put the gun to the back of [the victim's] head and shot" and that one witness saw the victim's "brains fly." Trial Trans. II at pp. 117-18. Given this evidence, Mr. Lykins was placed in the position of convincing the jury that petitioner was not guilty of first-degree murder. As the prosecutor stated in the appellate brief:

> It is axiomatic that a person shooting a gun at the victim and hitting him in the head intended to kill the victim. To have suggested that the shooter did not intend to kill the victim by shooting him in the head would have simply lessened the trial counsel's credibility with the jury before reaching the more arguable points involving premeditation. Far from being ineffective, this was trial strategy that likely succeeded in saving defendant from a first-degree murder conviction.

People's Brief on Appeal at p. 8 (docket no. 27). Plainly, any concession by petitioner's attorney that someone intended to kill Dawson was not a concession that petitioner had that intent.

### 3. Counsel's failure to request jury instructions for imperfect self-defense and voluntary manslaughter

Petitioner's third and fourth contentions are that Mr. Lykins failed to request jury instructions on imperfect self-defense and voluntary manslaughter.

> Third, defendant argues that defense counsel was ineffective for failing to request jury instructions on imperfect self-defense and voluntary manslaughter. "Imperfect self-defense is a qualified defense that can mitigate second-degree murder

to voluntary manslaughter." *People v. Butler*, 193 Mich.App. 63, 67, 483 N.W.2d 430 (1992). [FN3] Counsel's decision to request or refrain from requesting a lesser offense instruction is typically a matter of trial strategy. *People v. Robinson*, 154 Mich.App. 92, 93, 397 N.W.2d 229 (1986). Here, instructions on imperfect self-defense and voluntary manslaughter would have been contrary to defendant's theory at trial, which, as stated *supra*, was that defendant was innocent of killing Dawson. Defendant was not attempting to excuse any criminal conduct. Defendant testified that he did not know that Chevis had a gun and that he did not order Chevis to shoot Dawson. "The fact that the strategy chosen by defense counsel did not work does not constitute ineffective assistance of counsel." *People v. Williams*, 240 Mich.App. 316, 332, 614 N.W.2d 647 (2000). Defendant was not denied the effective assistance of counsel.

> [FN3. Our Supreme Court has not recognized the doctrine of imperfect self-defense. *Posey*, *supra* at 960, 590 N.W.2d 577. However, "panels of this Court have recognized the doctrine." *People v. Kemp*, 202 Mich.App. 318, 323, 508 N.W.2d 184 (1993).]

As previously mentioned, and more fully discussed in a separate section, petitioner cannot claim an error based upon an imperfect self-defense instruction, because this doctrine does not exist, and according to the Michigan Supreme Court has never existed in Michigan.[2] But to the extent petitioner even believes his counsel should have sought a self-defense instruction or a voluntary manslaughter instruction, these jury instructions which were entirely inconsistent with petitioner's own testimony. Specifically, petitioner testified that Petitioner testified that Chevis acted alone when he shot the victim. Trial Trans. VII at pp. 31-32, 35-36. It appears that petitioner's trial counsel did not raise either the imperfect self-defense instruction or the voluntary manslaughter instruction because both of these instructions were inconsistent with petitioner's own testimony and his defense theory. Counsel is not ineffective for making a strategic decision to use jury instructions which are consistent with both the criminal defendant's own testimony and his theory of the case. *See Scott v. Elo*, 302 F.3d 598, 606-07 (6th Cir. 2002) (trial counsel was not

---

[2]This issue is discussed more fully at IV.D.1., *infra.*

deficient for making a strategic decision not to request an involuntary manslaughter instruction, where such an instruction would be inconsistent with the defense's theory and the defendant's testimony).

### 4. Summary

The state court's decision rejecting petitioner's ineffective assistance of counsel claims was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on these claims.

### C. Admission of statements at trial (Issue III)

Petitioner contends that the trial court erred when it failed to admit out-of-court statements made by the gunman (Steven Chevis) to petitioner's sister (Starla Pierson) about why Chevis shot the victim. Petitioner wanted to introduce the out-of-court statement into evidence because Chevis admitted shooting the victim because petitioner was getting beaten up. Petitioner's Brief at p. 38. The trial court did not allow this statement, reasoning in part:

> So when we get down to looking at this statement, what we're really looking at is that part of the statement that says, "I shot," and basically went on to say because the defendant was struggling with another person and the other person seemed to be getting the better of him.
>
> . . . I'll acknowledge that it lessens to some degree the extent to which it's against the declarant's interests, because it incorporates within that a rationale for doing that, that is, coming to the defense of another person, which would justify that and which would be an excuse, and which in and of its very nature lessens the reliability, I would think, of the statement itself.
>
> Someone says, "Hey, I shot somebody," when that's at issue, clearly you've got a pretty significant statement against interests. To say, "I shot someone because

I went to the defense of a friend who was getting beaten up," lessens that, it seems to me, to some degree.

*       *       *

. . . I think the key to me here and the thing that most causes me to be concerned about the admissibility of the statement is the fact that the key to this statement, the key to why it would come in, would be the circumstances under which the shooting was done, that is, the defense of another person.

And that part of it, while I agree that Michigan law says that statements come in as a whole, that part of it, the only real relevant part when you get right down to it is such, to state a defense – to state a justifiable reason for doing it, which in and of itself reduces the whole idea of it being a statement against interest. It doesn't do away with it, it just is a factor to be considered, it seems to me, in this particular case.

*       *       *

So in looking at the law as it's been interpreted by our appellate courts and looking at the rule of evidence in question, respecting quite a bit the arguments being made by defense, I'm still inclined, and I think when I look at this and weigh all the factors, that in this particular instance, for the reasons it's being offered, given the [sic] I think lack of reliability on the part that is , really the only part that's relevant here, that the Court believes it should not be allowed to be brought in.

Trial Trans. VI at pp. 18, 24, 27.

The Michigan Court of Appeals addressed this issue as follows:

Defendant also argues that the trial court erred in excluding Chevis's out-of-court statement, made to Starla Pierson, defendant's sister, that he shot Gordon because Gordon was beating up defendant. We disagree.

A trial court's ultimate decision to admit or exclude evidence under MRE 804(b)(3) is reviewed for an abuse of discretion. *People v. Barrera*, 451 Mich. 261, 268, 547 N.W.2d 280 (1996). A statement is admissible under MRE 804(b)(3), if (1) the declarant is unavailable, (2) the statement was against penal interest, (3) a reasonable person in the declarant's position would have believed the statement to be true, and (4) corroborating circumstances indicated the trustworthiness of the statement. *Id.* The determination whether a statement was against the declarant's penal interest is a question of law reviewed de novo. *Id.* A statement is against a declarant's penal interest if the statement "so far tended" to subject the declarant to criminal liability. MRE 804(b)(3). This means that the statement must be probative of an element of a crime in a trial against the declarant, and a reasonable person in

the declarant's position would have realized the statement's incriminating element. *Barrera*, *supra* at 272, 547 N.W.2d 280.

After it called Starla as a witness, but before direct examination, the prosecution asked the trial court to prevent defense counsel from questioning Starla about statements Chevis made to her. Defense counsel informed the trial court that Chevis told Starla that he shot Dawson because Dawson was beating up defendant. Before deciding whether Chevis's statement qualified as a statement against penal interest, the trial court had Starla testify outside the presence of the jury. Starla testified that Chevis told her that he shot Dawson after seeing defendant on the ground being beaten by Dawson. Sharla further testified that, when she asked Chevis why he shot Dawson more than once, Chevis answered that he could not beat up Dawson. The trial court ruled that Chevis's out-of-court statement was not admissible under MRE 804(b)(3) because the statement offered a defense for the shooting, thereby "reduc[ing] the whole idea of it being a statement against interest."

Self-defense, which includes the right to defend another, is a complete defense to an otherwise intentional homicide. *Riddle*, *supra* at 126; *People v. Kurr*, 253 Mich.App. 317, 321, 654 N.W.2d 651 (2002). By stating that he shot Dawson because Dawson was beating up defendant, Chevis's statement to Starla was his attempt to explain that the shooting was necessary for Dawson's protection. As such, the statement did not tend to subject Chevis to criminal liability, but instead raised the complete defense of defense of others. Accordingly, the statement is not against Chevis's penal interest. *See United States v. Shryock*, 342 F.3d 948, 981 (C.A.9, 2003) (the declarant's statement that he shot the victim in self-defense was not against his penal interest). Because Chevis's statement was not against his penal interest, the trial court did not abuse its discretion in excluding the statement. [FN4]

> [FN4. We reject defendant's assertion that the exclusion of Chevis's statement violated his constitutional right to present a defense. A rule of evidence does not violate a defendant's right to present a defense as long as the rule is not "arbitrary" or "disproportionate to the purposes they are designed to serve." *Unger*, *supra* at 250 (quotation marks and citations omitted). Defendant has made no argument that MRE 803(b)(4) is arbitrary or disproportionate to the purposes it is designed to serve.

*Pierson*, slip op. at pp. 4-5.

Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[F]ederal habeas corpus relief does not lie for errors of State law." *Id.* at 67, *quoting Lewis v.*

*Jeffers*, 497 U.S. 764, 780 (1990). *See Byrd v. Tessmer*, 82 Fed. Appx. 147, 150 (6th Cir. 2003) ("[a]lleged trial court errors concerning the application of state evidentiary law, however, are not cognizable as grounds for habeas relief").

Here, the state courts found no error of state law. The Michigan Court of Appeals affirmed the trial court's decision to exclude the evidence under the state's rules of evidence and the Michigan Supreme Court denied petitioner's application for leave to appeal that decision. This court cannot act as a super-appellate court to overrule the state court's decision. The United States Supreme Court "repeatedly has held that the state courts are the ultimate expositors of state law" in federal habeas proceedings. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

To the extent that petitioner claims that the trial court's ruling violated his federal constitutional right to present a defense, this claim fails. The right to establish a defense "is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967). However, "a defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998).

> A defendant's interest in presenting such evidence may thus bow to accommodate other legitimate interests in the criminal trial process. As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve. Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.

*Id.* (internal citations and quotation marks omitted). *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (an evidentiary ruling "may violate due process and thus warrant habeas relief" when the ruling "is so egregious that it results in a denial of fundamental fairness").

Petitioner has failed to show that MRE 804(b)(3) is unconstitutionally arbitrary or disproportionate, or that the ruling was so egregious that it resulted in a denial of fundamental fairness. The thrust of petitioner's claim is that, under Michigan law, Chevis' statement was against his (Chevis') penal interest. While petitioner attempts to raise this as a federal constitutional claim, his arguments present nothing more than disagreement with the state court's application of a state evidentiary rule. While petitioner cites some federal case law for the general proposition that he has a federal constitutional right to have a meaningful opportunity to present a complete defense, he fails to establish that in this instance, the trial court's exclusion of Chevis' self-serving hearsay statement was so egregious that it violated that right.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

### D. The trial court failed to give instructions for imperfect self-defense and voluntary manslaughter (Issue IV)

#### 1. Imperfect self-defense

Petitioner contends that the trial court violated his constitutional rights when it failed to give a jury instruction for imperfect self-defense. This doctrine was defined in *People v. Butler*, 193 Mich. App. 63, 483 N.W.2d 430 (1992) as follows:

> Imperfect self-defense is a qualified defense that can mitigate second-degree murder to voluntary manslaughter. The doctrine applies only where the defendant would have been entitled to self-defense had he not been the initial aggressor.

*Butler*, 193 Mich. App. at 67. According to the Michigan Supreme Court, the doctrine of imperfect self-defense was first mentioned by in a footnote in *People v. Morrin*, 31 Mich. App. 301, 311 n.

7, 187 N.W.2d 434 (1971), first applied by the Michigan Court of Appeals in *People v. Springer*, 100 Mich. App. 418, 298 N.W.2d 750 (1980), and then applied in a number of subsequent decisions by the Michigan Court of Appeals. *See People v. Reese*, 491 Mich. 127, 147-48, 815 N.W.2d 85 (2012). The Michigan Supreme Court, however, never adopted this doctrine. On the contrary, in *Reese*, the Michigan Supreme Court stated that "the doctrine of imperfect self-defense does not exist as a freestanding defense that mitigates a murder to manslaughter because it was not recognized as such under the common law at the time the Legislature codified the crimes of murder and manslaughter." *Reese*, 491 Mich. at 150. The court further explained:

> As discussed, the doctrine first appeared in an 1882 Texas decision, postdating the Michigan Legislature's 1846 codification of the common law crimes of murder and manslaughter and their attendant defenses. It is significant that the doctrine of imperfect self-defense developed *after* the Legislature codified the common law crimes of murder and manslaughter, which means that the Legislature *could not have* codified the doctrine into the murder and manslaughter statutes. In further support of this conclusion, we note that when adopting the doctrine of imperfect self-defense, the *Springer* panel acknowledged that the doctrine was an innovation in the common law by stating that it " has been adopted in several jurisdictions. . . ." Thus, the *Springer* panel erred by purporting to change the common law of this state after the Legislature codified the common law crimes of murder and manslaughter in 1846. This Court has emphatically stated that once the Legislature codifies a common law crime and its attendant common law defenses, the criminal law of this state concerning that crime "should not be tampered with except by legislation. . . ."

*Reese*, 491 Mich. at 150-51 (footnotes omitted).

Although *Reese* was decided about five years after petitioner's conviction (and after respondent filed her answer in this habeas action), subsequent decisions of the Michigan Court of Appeals have treated the doctrine of imperfect self-defense as non-existent, even though some defendants may have sought to raise it pre-*Reese*. *See, e.g., People v. Mitchell,* – N.W.2d –, 2013 WL 2451344 at fn. 1 (Mich. App. June 6, 2013) (where the defendant asserted on appeal that the

trial court erred in denying his request for an instruction on imperfect self-defense, "during oral argument [on appeal], defendant conceded, and we agree, that this argument has no merit because our Supreme Court recently held that imperfect self-defense does not exist in Michigan"); *People v. Bacall*, No. 306269, 2013 WL 951084 (Mich. App. March 5, 2013) (affirming trial court's decision not to give imperfect self-defense instruction because that defense does not exist in Michigan); *People v. Stokes*, No. 307529, 2013 WL 238498 (Mich. App. Jan. 22, 2013) (the defendant's counsel was not deficient when he failed to raise an instruction on imperfect self-defense because "the doctrine of imperfect self-defense does not exist as an independent mitigation in Michigan"); *People v. Harvey*, No. 305274, 2012 WL 6177090 (Mich. App. Dec. 11, 2012) (affirmed the trial court's refusal to give an imperfect self-defense instruction on the ground that the "the doctrine's precedential viability was questionable," noting that the Michigan Supreme Court had "recently announced that imperfect self-defense is not a valid defense in Michigan").[3] Petitioner had no legal basis to seek an instruction for imperfect self-defense under Michigan law, and his claim for habeas relief for failing to receive that instruction should be denied.

### 2. Voluntary manslaughter

While the Michigan Court of Appeals' decision did not address this issue, petitioner raised it in his brief. "It is settled law in ths circuit that a constitutional claim which is presented to the state courts, regardless of whether they address and dispose of it, will satisfy the exhaustion requirement." *Rudolph v. Parke*, 856 F. 2d 738, 739 (6th Cir. 1988). Under Michigan law, "manslaughter is a *necessarily* included lesser offense of murder." *People v. Mendoza*, 468 Mich.

---

[3]The court finds that the Michigan courts have not construed the *Reese* decision as involving a "new rule" of criminal procedure. Rather, in *Reese*, the Michigan Supreme Court held that imperfect self-defense never existed in Michigan in the first place, and that the Michigan Court of Appeals' utilization of it was erroneous. *See Reese*, 491 Mich. at 147-61.

527, 544, 664 N.W.2d 685 (2003) (emphasis in original). "Although the Supreme Court has held that it is a violation of due process for a court to fail to instruct on a lesser included offense supported by the evidence in a capital case, *see Beck v. Alabama*, 447 U.S. 625, 627, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), it has not so held in noncapital cases." *Scott*, 332 F.3d at 606. The trial court's failure to instruct on a lesser included offense in a noncapital case is "not such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990). Petitioner had no federal constitutional right to a jury instruction for voluntary manslaughter in this case. *See Scott*, 332 F.3d at 606; *Bagby*, 894 F.2d at 797. Accordingly, petitioner's claim for relief on this basis should be denied.

### E.     Sentencing argument (Issue V)

Finally, petitioner contends that his sentence was improperly enhanced in violation of his Sixth Amendment right to a jury trial as announced in *Blakely v. Washington*, 542 U.S. 965 (2004) and an unconstitutional denial of due process of law under *Apprendi v. New Jersey*, 530 U.S. 466 (as interpreted in *Blakely*). The Michigan Court of Appeals rejected petitioner's argument:

> Defendant finally claims that, pursuant to *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), he was denied his Sixth Amendment, U.S. Const, Am VI, right to a jury trial and Fourteenth Amendment, U.S. Const, Am XIV, right to due process because the trial court enhanced his sentence based on facts not found by a jury beyond a reasonable doubt. However, our Supreme Court has determined that *Blakely* is inapplicable to Michigan's indeterminate sentencing scheme, in which a trial court sets a minimum sentence but can never exceed the statutory maximum sentence. *People v. Drohan*, 475 Mich. 140, 160-164, 715 N.W.2d 778 (2006). Accordingly, "[a]s long as the defendant receives a sentence within that statutory maximum, a trial court may utilize judicially ascertained facts to fashion a sentence within the range authorized by the jury's verdict." *Id.* at 160, 715 N.W.2d 778. Defendant's assertion that his sentence was improperly enhanced in violation of his constitutional rights is without merit.

*Pierson*, slip op. at pp. 5-6.

*Blakely* concerned the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Applying the Washington mandatory sentencing guidelines, the trial judge found facts that increased the maximum sentence faced by the defendant. The Supreme Court found that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Blakely*, 542 U.S. at 301 (citing *Apprendi*, 530 U.S. at 490.

Unlike the State of Washington's determinate sentencing system, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term. The Sixth Circuit has determined that *Blakely* does not apply to Michigan's sentencing system, provided that the sentence does not exceed the statutory maximum. *See Montes v. Trombley*, 599 F.3d 490, 496-98 (6th Cir. 2010) (Michigan's indeterminate sentencing scheme did not violate the defendant's due process rights or right to a jury trial under *Blakely*); *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (affirming district court's dismissal of prisoner's claim under *Blakely* and *Apprendi* because it does not apply to Michigan's indeterminate sentencing system, and stating that "*Apprendi*'s rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum"); *Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007) (*Blakely* does not apply to Michigan's indeterminate sentencing system).

Here, petitioner was convicted of second-degree murder, which carries a maximum penalty of "imprisonment in a state prison for life," M.C.L. § 750.317, and felony firearm, which carries a maximum (consecutive) sentence of two years, M.C.L. § 750.227b. The court sentenced petitioner to a prison term of 27 to 50 years for the second-degree murder conviction, with a consecutive prison term of 2 years for the felony firearm conviction. These sentences did not exceed the applicable statutory maximum of life imprisonment plus two years. Accordingly, *Blakely* does not apply to petitioner's sentence.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

## IV. Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated: July 9, 2013                          /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).